Good morning, Monica Knox for Mr. Jenkins, and I'm going to try to reserve two minutes for rebuttal. Okay. In Neville's, this court reasserted the Jackson v. Virginia standard for sufficiency of the evidence. But in doing so, it's important when applying that to this case to remember that while the jury is the exclusive judge in terms of choosing between alternative reasonable inferences, there is nothing that allows the jury to pick one or two pieces of evidence and ignore undisputed pieces of evidence. And that's what the government's doing in this case. I'm not sure I understand your argument. I mean, the problem you've got, and I empathize with you because I've had this happen to me as a litigant, you relied heavily on the three-judge panel decision in Neville's in your briefing, and then the in-bank decision comes down and sort of cuts you off at the knees. Don't you have a better argument on the jury instruction rather than the sufficiency of the evidence? I hope to be able to move to that, but let me just spend a few minutes on the sufficiency. I did not rely heavily on Neville's. I relied on Neville's. It was a panel opinion at the time, hadn't been granted. I would have been stupid not to have used it. Sure, sure. By the time I filed my reply brief, it had been granted re-hearing en banc, and I totally disavowed any reliance on Neville's, so I didn't. Okay? What's clear is that under Neville's, there is insufficient evidence here. What they have is his proximity to a gun. And that is reaching around. Yeah. Well. He kept reaching around because he was trying to find something which, incidentally, would have been right where the gun was if it hadn't slipped out the door. How? Well, with all due respect, Judge Fernandez, that's total speculation that it would have been right where the gun was. No, that's an inference. The point is he was reaching at that part of the car. Well, first of all, all the cases. But maybe your argument is at that point, well, he was reaching around, but it wasn't  That's exactly it, Judge Fletcher, because all the cases, all the cases, including Neville's, which talk about a furtive gesture to an area being circumstantial evidence of knowledge, are cases where the contraband, the gun, the drugs, whatever, was found where he was reaching. Well, Neville's would have had the same problem if the police had lifted the weapon off of his leg before he reached for it. It wouldn't have been there. Neville's was an actual possession. It's different. Jenkins was never, there is no evidence that he was an actual possession. How about constructive possession? Can we go to that? What's the definition first of constructive possession? I had a little trouble actually finding a clear definition for that concept. Well, what this Court has said is in addition to knowing that it's present, he has to have the intent to control it. So it's requiring... Does he have to have the ability to control it also? Ability and intent or power, sometimes is the word. So where do you get the word intent to control it? I got the ability, but where's the intent? Where does it come from? The case law? Yeah, yeah. It's cited in my brief, and I can look for it briefly. Maybe I can give you that for rebuttal, because I don't want to spend time going through my brief. Let's move to the instructional issue. I would encourage the Court, though, to read my reply brief about this stuff on the sufficiency. We will do it, but I'm really interested in your argument on the instruction issue. We have conceded that felon in possession is a general intent. And that as a general rule, voluntary intoxication is not relevant to a general intent crime. The government's brief just keeps saying it's a general intent crime. The problem is that there was a theory of liability that required a specific intent. That is, the intent to control. And it's also very clear from this record and the questions that the jury was asking during deliberations that at least some of the jurors were going with that theory of liability, that is, constructive possession. What this Court has said in the analogous situation, Syed-Sil, for example, I'm not sure if I'm pronouncing that correctly, is that even if you have a general intent crime, if there is a theory of liability submitted to the jury that requires a specific intent, then voluntary intoxication is relevant, and it is error for the district court to tell the jury that it's not relevant. That's the case. Breyer. Besides the Sixth Circuit, what cases have said that it is a specific intent crime? The Syettville case is a case from this Court. Excuse me. Would you let me finish my question, please? I'm sorry. Thank you. I thought you were done. Besides the Sixth Circuit, what cases indicate that it is a specific intent crime? If what you mean, it felon in possession, there is no case that says felon in possession is a specific intent crime. And I'm not arguing that it is. What I am – No. You said one part of felon in possession is specific intent. I believe you said. Notice the jury was instructed even in felon in possession if he has actual control or if he knows about the presence and, let's say, intends to control it. Right. That's what it says. Right.  And that's a theory of liability. And I do not have a case – I was unable to find either in this circuit or any circuit a case where the challenge was to the theory of liability. In the cases where courts have – in felon in possession cases where courts have specifically held that voluntary intoxication is not a defense, those are all cases of actual possession. So although I don't have a case that says – a felon in possession case that says the theory of liability requiring specific intent makes voluntary intoxication relevant, there is none that I am aware of that says it is not. And I would argue – But would your argument be that the jury should be instructed on a different set of elements based upon the theory that the government is pursuing for a felon in possession charge here? It's not a different set of elements. The jury was properly instructed on constructive possession insofar as what the elements of constructive possession are, which is knowledge and ability and intent to control. The problem is they were told that voluntary intoxication was not relevant to that. And that, the intent to control, is in fact a specific intent. The general rule is that voluntary intoxication is relevant to a specific intent. And the more specific rule that comes out of a – what I would argue are analogous cases such as second-degree murder, which is a general intent crime. But if the theory of liability for second-degree murder, such as aiding and abetting, requires specific intent, then it becomes there's a specific intent that's involved in voluntary intoxication and is relevant. Can I come back to Judge Fernandez's question? Because I think there might have been a passing in the night on that. He asked you whether you had any cases besides the Sixth Circuit case and Newsom that would support your argument that when constructive possession is at issue, specific intent is required. And you answered, I think, not precisely that question because you said I don't have any cases. Can you tell me how Newsom fits into your argument? Because maybe I misunderstood your answer. I may have misunderstood the question. I thought he was asking if I had a felon in possession case which says that when it's constructive possession, voluntary intoxication is a defense. And that's what I answered no to. Besides Newsom, I do not have – Newsom does say that if there is constructive possession, that intent to control is, in fact, a specific intent. And so, yes, I do have that. I do not have a Ninth Circuit case that has that. Okay. No, I'm back on track. Okay. I'm going to try to reserve the rest of my time. Okay. Sure. Your Honor, may I please the Court? Michael Beckwith on behalf of the United States. I was one of the true trial attorneys for the government in this case. Now, if we were to say that Newsom in the Sixth Circuit is the law we will follow here in the Ninth Circuit, what happens to your case? Your Honor, I think that would just create a conflict within the circuit precedent. Newsom is in conflict with its own precedent in the Sixth Circuit, and Newsom is in conflict with the precedent in this circuit under Lucere, under Sayet-Setty. Okay. But let me ask you the question in a slightly different way. Assume that Newsom is the law in this circuit, and whatever conflicts might exist within the Sixth Circuit and whatever conflict we might find with respect to the case where we simply assumed because it wasn't argued that way, just Newsom is the law. What happens? Your Honor, I think at that point the question is whether or not Newsom was, in fact, discussing specific intent in the right context. As we know, Newsom was discussing specific intent in a 404B context, and I believe that was dicta. But the issue here, it creates a problem for the government if the ---- Well, that's why I'm asking you the question. Right. Your Honor, I don't think this is the case that governs, but it would create a problem in that specific intent, if it is required, would require an additional set of elements, would create essentially an entirely new body of law. But the problem that the defense overlooks here with Sayet-Setty is that the intent discussed in the definition of possession is just part of that definition. The definition of possession doesn't discuss specific intent, whereas in Sayet-Setty the definition that led to a specific intent crime actually said a specific intent is required. Let me ask you this. What, in your view, is the definition of constructive possession? Yes, sir. That might help me understand what sorts of things you need to prove in order to prove constructive possession. Your Honor, a person has possession of something if a person first knows of its presence and has the physical control of it, or in constructive possession context, knows of its presence and has the power and intention to control it. And where does that come from? That's a Ninth Circuit model jury instruction, Your Honor. Does it come from a case? Occasionally jury instructions are wrong. I'd have to look back and see what specific case it comes from. But that is your problem. You're going to have trouble finding a case that said it just that way. Your Honor, but I'd like to point out that that is... It's what the jury was told, though, right? It is what the jury was told, Your Honor. Is this a plein air standard? Should we be applying a plein air standard? Your Honor, I think with regard to jury instruction 17, plein air should apply because there was discussion over simply the word possession and receipt. However, with regard to instruction 18, the defense did object to 18. The court certainly understood the defense's position with respect to 18. Your Honor, I would like to point out... If intent is required, why is it not relevant to a decision whether someone had the intent, that is to say for constructive possession, that he was so drunk that he couldn't have much intent for anything? Your Honor, because there are different types of intent. There's general intent and there's specific intent. Here we have a jury instruction that mentions the word intent. And from that, the defense is attempting to build the idea or create the idea that this is a specific intent crime, but it's not. This is a general... You know, that's kind of abstract for me. My question is in a sense a more lay sense of the term. How can someone intend if that person is so intoxicated that he's fallen asleep and is intoxicated as this man was at the time of his arrest? Your Honor, a person can intend to do a number of things when they're intoxicated. They can get behind the wheel of a car. They can drive that car. They can do simple things without question. When it comes to higher levels of intent, specific intent, for example, intent becomes an issue. If they have the requisite intent to form a premeditated or to form premeditation in the mind, a requisite, the mental capability to involve themselves in an inchoate crime. Here, this is a simple crime. This is a very simple crime. It's only possession. Does he possess it or not? The... Well, Congress is very... And I understand what you're saying. You can be intoxicated and still intend to do certain things. And is this something that the jury is not entitled to consider? Not in this case, Your Honor. Because? Because Congress was very specific when they drafted this statute to give this crime a general intent, define this crime, 922G1, as a general intent crime requiring the lowest level of intent, simply that... And what's your evidence for what Congress' intent is? I'm sorry, Your Honor? And what is your evidence for what Congress' intent is? Your Honor, it's... If you want to go to... The site would be... I mean, beyond the words of the... Are you looking for something beyond the words of the statute? Yes, Your Honor. I was looking at congressional intent. If you... And if the words of the statute are clear, do I look at congressional intent? Well, we're here, Your Honor, because apparently the defense thinks the words of the statute are not clear. Well, maybe I think they're clear and I agree with the defense. I mean, I don't know yet, but... Well, let me try to persuade you otherwise. Okay, okay, okay. Congress was clear. The House Judiciary Committee said that this is a specific intent crime because we have... No, you mean to say general intent? Yes, I do. Yes, yes. Go ahead. The House Judiciary Committee was clear by applying knowingly as the mens rea of this crime, it is a general intent crime and a crime requiring only the lowest level of intent. This is a simple crime, sir. Either you possess the weapon or you don't. And here, unlike Sayat-Seti, the defendant here was the primary. He was the primary actor, whereas in Sayat-Seti, we actually have a federal, an independent federal crime that was charged. It's 18 U.S.C. Section 2, aiding and abetting. That crime has its own list of elements, including the first element, which requires specifically a specific, quote, specific intent. And so Sayat-Seti really isn't really a case that should govern what the Court's doing here because the elements in Sayat-Seti, the four of them, establish a very specific, well-known, long-honored, specific intent crime. Can you ever physically control something without intending to? Yes, Your Honor. I think if I were to be passed out without intending to. If you're passed out, I said, can you ever, can you ever? That's the problem with parsing, and I think the instructions often, the booklets often say, you know, this specific, general intent stuff is just things to confuse courts. But can you ever, can you ever control something without intending to? In the constructive, I think. Never mind constructive, just period. Are you going to prosecute me because there's a gun someplace, and you're going to say I controlled it, but I had no intention of controlling it? Somehow I controlled it? I think the way that, I don't think so, Your Honor. That's not a strong case for the government. I think the issue here in the definition of possession, which is one portion, one element of an agreed upon general intent crime, the, you know, the word power and intention is modifying control, just like we have actual control in the other. And I don't think that, it's an interesting question. I don't think that's a strong case for the government. I don't, if someone doesn't intend to control something at a distance, for example, my keys that are back in my hotel room right now, if I don't intend to control those, I don't know if that's a crime that we'd want to charge. But this is simply what the Court has done to help the jury who doesn't have the understanding of specific and general intent to get along with the issue. And, you know, in Bailey, the Court points out, and the Supreme Court specifically warns against these novel hair-splitting distinctions, as the defendant raises here. These are distinctions that Congress never intended nor implied. Congress is very specific here. Roberts. Let me ask you a different question. This case was tried to the jury, obviously, on the theory that either he, I read it right, either he was passed out before the gun got there or he wasn't. And the jury was told about intoxication and such. Look, of course, if he was passed out before the gun even got there, he couldn't be held because he wouldn't have knowing possession. And it seems that he has tried that way to the jury on all sides. I'm having a little trouble seeing how we could assume the jury would decide some esoteric theory of. Your Honor, let me try to address that for you. First of all, the government's theory of conviction here was an actual possession theory. We argued throughout closing that he possessed a weapon earlier in the evening, and he couldn't have constructively possessed it at the time he was found unless he had possessed it actually earlier. When it comes to the jury's question, I think the defense misreads their question just a little bit. The juror asked or told the court that, quote, some feel it should be in the hand and others feel it could be otherwise. The jury is essentially just struggling with the definition of the law. What is the is and what is the ought? What is the law is what they're essentially asking. And the court just rereads the instruction. And then they come back with a verdict. But if the jury is asking that question, that question assumes, and I'm not saying what the jury concluded, but that question assumes that the jury has rejected your argument that he possessed it in hand earlier in the evening. Because if you're able to persuade them that he possessed it in hand earlier in the evening, they don't get to that question. Because they're now focusing on does he possess it when he's inside the car and the outside the car, on the ground, next to the car. I'm not sure I totally agree with you, Your Honor. It may just be that they're trying to sort out what the law is. It may just be that at this point they're trying to figure out what is the law that we're supposed to apply. I don't think we disagree. That is to say, I'm not saying that they've rejected your idea, that earlier argument, but that question is premised upon rejection of that argument. That question is premised upon does he possess it while it is outside the car. Well, there may just be some confusion amongst the panel members as to what the law is and can he do it one way or can he do it the other way. And the foreman just simply asks, what is the law? And I think that shortly thereafter they go back and with the understanding that he can possess it actually, he can possess it constructively, and they return a verdict. But the point is that the government argued throughout its case that this is an actual possession case. And really, you know, Newsom, the case that defense relies on, is truly a constructive possession case. In Barron-Rivera and Lucere, this court has found that, has looked at 922G in the context of a general intent crime when constructive possession was involved as well, especially within Barron-Rivera. So just to make sure I understand your argument, and that is as to why this was actual possession, that we should look or that the jury should look to where this gun was earlier in the evening before it got outside the car. And I assume your theory is, well, he drives this Cadillac into the ditch. I mean, I think you guys must have thought at the beginning this was a really easy case so you don't even figure out who owns the car, how he got in the possession of the car. I mean, I don't understand why we don't have that stuff on the record. So he drives it into the ditch. He opens the door. I don't know whether the door is obstructed so he doesn't get out or whether he just opens the door. The gun falls out and it's now there on the ground, which is your point about, well, the gun and the cell phone charger were dry, as distinct from the ball that's there that's wet from the dew, which necessarily means, according to your argument, well, there was a time when it was right next to him in the car, between the seat and the car door, and we're after him for that. That was your argument, right? Essentially, Your Honor, there was more. This is not a matter of record, but the government believed the defense was going to put on a particular witness, and there's unless you want me to go, I can explain that, but I'll move on. Well, way over the time, let's not start talking about stuff off the record. Yes, Your Honor. Okay. Let's hear from Ms. Knox. Your Honor, unless you have further questions, we ask you to affirm. Thank you. I'm sorry for taking you away. I think Judge Fletcher has caught what one of the major problems in this case is, is that the government just didn't put on a lot of evidence. And I don't know whether it existed or not, and the fact that he would start to tell you is a little problematic. But not only do we not know anything about this car, we don't know that he was ever driving it. They find no key. The car was not hot-wired or anything. They find no keys. We don't even know he was driving it. I disagree with the ---- Well, they put into evidence no keys. Right. This case was not, with all due respect, Judge Fernandez, this case was not tried as if as the sole question being whether the gun turned up after he passed out or before he passed out. The government's entire case was to try to show that maybe he had some type of possession of this gun long before he was ever found passed out in the car. And general and specific contempt, first of all, I did find the citations to what the circuit has said about constructive possession being that he had, that he knows it's there and that he has the power and intention to control it. United States v. Cain, 130 fed third at 38. United States v. Ruiz. You went too fast. One something or other. 130 fed third at 38. United States v. Ruiz, 462 fed third at 1088. They are on page 29 of my opening brief. Okay. We have a lot of law students here that I think could tell you the difference between general intent probably better than those of us who have been out of law school for a long time. But in particular, in general, general intent means that you only have to intend to do the act. General intent means that there's some mental state. The intent to control. No, it doesn't mean some mental state. You always have to have a mental state. Mental state beyond the intent to do the act. With actual possession, it's a general intent crime because all you have to do is intend to possess the gun and know that you possess it. And with constructive possession, the circuit and all other circuits have specifically said you have to intend to control, which is beyond that, the way that in Syed's study, the aiding and abetting, which he was not charged with, the jury was instructed, but he was not charged with that, is beyond that. You're over time. Have you got one thought with which you'd like to leave us beyond what you've already said? Yes. The prejudice. Because what the jury specifically said is that what we're having a problem with is whether it should be in his hand. Some of us believe it should be. Some of us believe it's not. It shouldn't be. Or it's not necessary. So it's clear in that light that there was prejudice, that the instruction was wrong. Okay. Thank you very much. Thank both sides for your argument. The case of United States v. Jenkins is now submitted for decision.
judges: Fernandez, Fletcher W. , Tallman